Eric Meckley (Bar No. 168181)
Robert Jon Hendricks (Bar No. 179751)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel.:   415.442.1000
Fax:   415.442.1001
*emeckley@morganlewis.com*
*rhendricks@morganlewis.com*

Clifford D. Sethness (Bar No. 212975)
Jason M. Steele (Bar No. 223189)
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel:  213.612.2500
Fax:  213.612.2554
*csethness@morganlewis.com*
*jsteele@morganlewis.com*

*Attorneys for Plaintiff*
PACIFIC MARITIME ASSOCIATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC MARITIME ASSOCIATION, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 10, an unincorporated labor organization,<br><br>Defendant. | Case No. 15-CV-2163<br><br>**COMPLAINT FOR CONFIRMATION AND ENFORCEMENT OF LABOR ARBITRATION AWARDS** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 25917513.1

COMPLAINT
15-CV-2163

Plaintiff PACIFIC MARITIME ASSOCIATION, for its Complaint against Defendant INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 10, herein, alleges as follows:

## JURISDICTION

1. This is an action to confirm and enforce a labor arbitration award issued pursuant to a collective bargaining agreement. This action arises under Section 301 of the Labor Management Relations Act of 1947, as amended (29 U.S.C. § 185). Jurisdiction is conferred upon this Court by the provisions of that section.

2. Plaintiff PACIFIC MARITIME ASSOCIATION ("PMA") is, and at all times mentioned herein was, a non-profit corporation organized and existing under and by virtue of the laws of the State of California. PMA maintains its principal office at 555 Market Street, San Francisco, California.

3. PMA is a multiemployer collective bargaining association whose members include stevedoring companies, terminal operators, and maintenance and repair contractors that employ dockworkers, such as longshoremen, in the San Francisco Bay Area and throughout the United States Pacific Coast. PMA represents these employers in their collective bargaining relations with the labor organizations representing dockworkers in the negotiation of collective bargaining agreements and the administration and enforcement of the provisions thereof. PMA and its members are, and at all times mentioned herein were, employers in an industry affecting commerce, as defined in Section 501 of the Labor Management Relations Act of 1947 (29 U.S.C. § 142) and Section 2 of the National Labor Relations Act (29 U.S.C. § 152) and within the meaning of Section 301 of the Labor Management Relations Act (29 U.S.C. § 185).

4. The International Longshore and Warehouse Union ("ILWU") is an unincorporated association commonly known as a labor union and maintains its principal offices in San Francisco, California. The ILWU is, and at all times mentioned herein was, the duly certified collective bargaining representative for dockworkers employed by members of PMA on the Pacific Coast. The ILWU, on behalf of itself and each of its locals in California, Oregon and Washington, negotiates and enters into the collective bargaining agreements described below with

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES
DB2/ 25917513.1

1

COMPLAINT
15-CV-2163

PMA, covering terms and conditions of employment of dockworkers employed by PMA members on the Pacific Coast. The ILWU is, and at all times mentioned herein was, a labor organization representing employees in an industry affecting commerce, as defined in Section 501 of the Labor Management Relations Act (29 U.S.C. § 142) and Section 2 of the National Labor Relations Act (29 U.S.C. § 152) and within the meaning of Section 301 of the Labor Management Relations Act (29 U.S.C. § 185).

5. Defendant International Longshore and Warehouse Union, Local 10 ("Local 10") is an unincorporated association commonly known and referred to as a labor union and maintains its principal offices in San Francisco, California. Local 10 is a local of the ILWU and is, and at all times mentioned herein has been, a representative of longshoremen employed by members of PMA in the San Francisco Bay Area Ports. As such, Local 10 is, and at all times mentioned herein was, a labor organization representing employees in an industry affecting commerce, as defined in Section 501 of the Labor Management Relations Act (29 U.S.C. § 142) and Section 2 of the National Labor Relations Act (29 U.S.C. § 152) and within the meaning of Section 301 of the Labor Management Relations Act (29 U.S.C § 185).

## INTRADISTRICT ASSIGNMENT

6. A substantial part of the events or omissions giving rise to the claims in this action occurred in the counties of Alameda and San Francisco. This action therefore should be assigned to the San Francisco Division or the Oakland Division pursuant to Civil L.R. 3-2(d).

## FACTUAL BACKGROUND

7. The ILWU, on behalf of its longshore locals in California, Oregon and Washington, including Defendant Local 10, and all employees performing work thereunder, and PMA on behalf of its members, entered into the PACIFIC COAST LONGSHORE CONTRACT DOCUMENT 2008-2014, effective as of July 1, 2008 (hereinafter the "PCLCD"). The PCLCD covers longshoremen employed by PMA members in the San Francisco Bay Area.

8. The 2008-2014 PCLCD expired on July 1, 2014. Pursuant to their mutual duty to bargain in good faith under Section 8(d) of the National Labor Relations Act, the parties continued the existing terms and conditions of employment, except that there was no agreement

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 25917513.1

2

COMPLAINT
15-CV-2163

to continue Section 11's bar on work stoppages or Section 17's duty to submit post-expiration stoppage disputes to arbitration.

9. On Friday, February 20, 2015, PMA and the ILWU reached a tentative agreement on a new Memorandum of Understanding, which sets forth the terms and conditions of the next, five-year PCLCD, which will run until June 30, 2019, once each side ratifies the new contract. There is an established past practice of restoring the obligations to refrain from work stoppages and to submit disputes to arbitration during the interim period from tentative agreement to ratification of the new contract.

10. During the final negotiations session on February 20, and in the presence of the federal mediator, PMA and the ILWU expressly agreed to return all work and operations to normal, as set forth in Section 11 and all other relevant provisions of 2008-2014 PCLCD. Further, the parties expressly agreed that the Area Arbitrators that were in place at the expiration of the 2008-2014 PCLCD would hear all on-the-job arbitrations under Section 17, which include disputes for violation of Section 11, until no later than two weeks after the new contract is ratified. On February 22, 2015, PMA and the ILWU agreed that "area arbitrator authority is limited to determining conditional/maximum penalty cargo rates and interim rulings under Sections 17.829 and 17.61 of the [PCLCD]."

11. Because the authority of the area arbitrators currently is limited to interim rulings under Section 17.61 of the PCLCD, neither side may request the area arbitrators to conduct a formal hearing under the contract. Decisions of the area arbitrators therefore cannot be appealed and are final and binding under the PCLCD.

12. Section 11 of the PCLCD, entitled "NO STRIKES, LOCKOUTS, AND WORK STOPPAGES," provides, in relevant part:

> 11.1 There shall be no strike, lockout or work stoppage for the life of this Agreement.
>
> 11.2 The Union or the Employers, as the case may be, shall be required to secure observance of this Agreement.
>
> 11.3 How work shall be carried on.
>
> 11.31 In the event grievances or disputes arise on the job, all men and gangs shall continue to work as directed by the employer in accordance with the specific provisions of the

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES
DB2/ 25917513.1
3
COMPLAINT
15-CV-2163

Agreement or if the matter is not covered by the Agreement, work shall be continued as directed by the employer.

11.5 Picket Lines.

11.51 Refusal to cross a legitimate and bona fide picket line, as defined in this paragraph, shall not be deemed a violation of this Agreement. Such a picket line is one established and maintained by a union, acting independently of the ILWU longshore locals, about the premises of an employer with whom it is engaged in a bona fide dispute over wages, hours or working conditions of employees, a majority of whom it represents as the collective bargaining agency. Collusive picket lines, jurisdictional picket lines, hot cargo picket lines, secondary boycott picket lines and demonstration picket lines are not legitimate and bona fide picket lines within the meaning of this Agreement.

11.52 If an ILWU longshore local located within the confines of the United States whose members are not covered by this Agreement is engaged in a legitimate, bona fide, nonjurisdictional and noncollusive strike concerning wages, hours or working conditions of its members, no longshoreman under this Agreement shall be required to perform work hereunder respecting cargo that normally, without such strike, would be handled by members of such ILWU longshore local but which has been handled or is destined to be handled by other workers engaged in strikebreaking activities under established and legitimate trade union principles.

13. Section 17 of the PCLCD, entitled "JOINT LABOR RELATIONS COMMITTEES, ADMINISTRATION OF AGREEMENT AND GRIEVANCE PROCEDURES," provides a mandatory procedure for the presentation, adjustment and settlement of grievances, with binding arbitration as the final step. Under Section 17, disputes are first heard by the Joint Port Labor Relations Committee ("JPLRC"), which is comprised of employer and union representatives, each side having an equal vote. If the JPLRC cannot agree, either side may refer the dispute to the Area Arbitrator for a decision.

14. Section 17 provides, in relevant part:

17.15 The grievance procedure of this Agreement shall be the exclusive remedy with respect to any disputes arising between the Union or any person working under this Agreement or both, on the one hand, and the Association or any employer acting under this Agreement or both, on the other hand, and no other remedies shall be utilized by any person with respect to any dispute involving this Agreement until the grievance procedure has been exhausted.

17.55 All decisions of the arbitrators, except as provided in Sections 17.261 and 17.6, shall be final and binding upon all parties. Decisions shall be in writing signed by the arbitrator and delivered to the respective parties.

17.57 All decisions of arbitrators shall be observed and/or implemented. No decision of an Area Arbitrator, interim or formal, can be appealed unless it is observed and/or implemented.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 25917513.1

4

COMPLAINT
15-CV-2163

17.61 When a grievance or dispute arises on the job and is not resolved through the steps of Sections 17.21 and 17.22, and it is claimed that work is not being continued as required by Section 11, a request by either party shall refer the matter to the Area Arbitrator (or by agreement of the Joint Coast Labor Relations Committee to the Coast Arbitrator) for his consideration in an informal hearing; such referral may be prior to formal disagreement in any Joint Labor Relations Committee or upon failure to agree on the question in the Joint Area Labor Relations Committee. Such hearing may be ex parte if either party fails or refuses to participate, provided that the arbitrator may temporarily delay an ex parte hearing to permit immediate bona fide efforts to settle an issue without a hearing.

17.62 The arbitrator shall act with his powers limited strictly to the application and interpretation of the Agreement as written. The parties shall have the right to present such views as they wish to the arbitrator, but it shall not be necessary to have a shorthand or stenotype reporter present to report the proceedings nor shall employment of counsel be necessary. The arbitrator, on this basis, shall promptly issue an oral interim ruling with respect to the grievance or dispute and thereafter confirm it in writing. An interim ruling shall be binding on the parties regarding the particular issue on the particular ship on the particular occasion but shall not set precedent for other cases. Any interim ruling shall be binding unless reversed by a contrary decision after a formal hearing.

15. Local 10 and its officers and the longshoremen they represent are under a duty to abide by the above-mentioned provisions of the PCLCD.

## COUNT ONE

16. On April 16, 2015, a longshore gang refused the employer's order to shift from one vessel to another at the Ports America Outer Harbor (PAOH) terminal in Oakland. The employer fired the gang. A second gang then also refused to shift, in a show of support for the first gang. The second gang also was fired.

17. The next day, April 17, 2015, Local 10 failed to fill 12 tractor jobs on the first shift. Local 10's refusal to fill these jobs was a concerted action in response to the firing of the two gangs the day before.

18. In response to Local 10's actions, PMA filed a complaint under the PCLCD, alleging that Local 10 was engaging in a work stoppage in violation of Section 11. The dispute was referred to William Niland, the designated Area Arbitrator for the San Francisco Bay Area. Arbitrator Niland conducted a hearing on April 17, 2015. Both the employers and Local 10 presented evidence and argument at the hearing.

19. After the hearing, Arbitrator Niland issued Decision NCAA-0006-2015, in which he ruled as follows:

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 25917513.1

5

COMPLAINT
15-CV-2163

> 1. ILWU Local 10, its Officials and members, are guilty of a violation of Section 11.1 on the first shift of April 17, 2015.
>
> 2. ILWU Local 10, its Officials and members, shall cease and desist causing a slow down or work stoppage at POAH resulting in the delays of the sailing of the shifts.

20. Despite Arbitrator Niland's award, Local 10 continued with its illegal work stoppages. On May 5, 2015, during the second shift, Local 10 refused to fill longshore jobs at the STS terminal in Oakland, resulting in no work being performed on a vessel at that terminal. On the next shift on May 6, 2015, Local 10 failed to dispatch any workers to the STS terminal, again resulting in no work being performed on the vessel.

21. In response to Local 10's actions, PMA filed another complaint under the PCLCD, again alleging that Local 10 was engaging in a work stoppage in violation of Section 11. Arbitrator Niland conducted another hearing on May 6, 2015. Both the employers and Local 10 presented evidence and argument at the hearing.

22. After the hearing, Arbitrator Niland issued Decision NCAA-0009-2015, in which he ruled as follows:

> 1. ILWU Local 10, its Officials, dispatchers and members, are guilty of a violation of Section 11.1 on the second shift of May 5, 2015 and first shift May 6, 2015.
>
> 2. ILWU Local 10, its Officials, dispatchers and members, shall cease and desist causing a work stoppage at STS.

23. Local 10's work stoppages have violated and will continue to violate the PCLCD and the Area Arbitrator's awards. Local 10's actions have interfered with and will continue to interfere with the ability of PMA's member employers to engage in longshore operations at the Port of Oakland, resulting in continuing delays and costs to the employers and their customers. Without an enforcement order from this Court, it is likely that Local 10 will continue its illegal work stoppages.

WHEREFORE, PMA prays for judgment against Defendant ILWU Local 10, as follows:

1. That the Court confirm and enforce Arbitration Decisions NCAA-0006-2015 and NCAA-0009-2015 and order Local 10 to comply with those awards.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 25917513.1

6

COMPLAINT
15-CV-2163

2. That judgment be entered against Local 10.

3. For PMA's costs of suit incurred herein, including reasonable attorneys' fees; and

4. For such other relief as the Court may deem just and proper.

Dated: May 13, 2015            MORGAN, LEWIS & BOCKIUS LLP

By    / s / Clifford D. Sethness
Clifford D. Sethness
Attorneys for Plaintiff
PACIFIC MARITIME ASSOCIATION

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 25917513.1

7

COMPLAINT
15-CV-2163